Submitted on record and briefs December 7, 2001, affirmed on appeal and cross-appeal June 5, 2002

In the Matter of the Estate of
Ceciel K. Evans, Deceased.

Grady RAWLS,
successor in interest to the State of Oregon,
by and through the Department of Human Resources,
Adult and Family Services
and Senior and Disabled Services Division,
and Kathleen Rawls, Personal Representative
of the Estate of Ceciel K. Evans, Deceased,
*Appellants - Cross-Respondents,*

*v.*

Kenn EVANS,
*Respondent - Cross-Respondent,*

*and*

Steve ZOLLMAN
and Alpine Insurance Center, Inc.,
*Respondents - Cross-Appellants.*

2611; A104526

48 P3d 159

D. Rahn Hostetter filed the briefs for appellants - cross respondents.

J. Thomas Coats filed the brief for respondent - cross-respondent.

Jacqueline G. Haggerty filed the briefs for respondents - cross-appellants. With her on the briefs was Jacqueline G. Haggerty, P.C.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

This appeal and cross-appeal arise out of the probate of Ceciel Evans's estate. The sole asset of the estate is an 80-acre piece of property (parcel "B"). Before her death, Evans entered into an earnest money agreement with Steven Zollman to sell the property to him. However, the sale did not close before Evans's death because of the assertion of liens by Kenn Evans, the State of Oregon, and Farm Credit Services. After Evans's death, the property went into probate. Kathleen Rawls, the personal representative of the estate, sought permission from the trial court to deed the property to herself, rather than to perform under the earnest money agreement with Zollman. Rawls is a devisee in decedent's will. Zollman, in turn, requested specific performance of the earnest money agreement.

After several hearings, the trial court entered the judgment that is the subject of this appeal. Pursuant to ORCP 67 B, the judgment declares that Kenn Evans holds an equitable lien against the property in the amount of $40,187 and that that lien is inferior to the mortgage lien held by Farm Credit Services. The judgment orders the property deeded to Zollman after payment of the purchase price in the earnest money agreement. From the proceeds of the payment of the purchase price, the judgment orders first, payment of the Farm Credit Service's mortgage; second, payment of Kenn Evans's lien; third, payment of taxes and reasonable costs of the sale; and, fourth, that "all remaining sums will be applied to the State of Oregon mortgage, and upon such payment, the State of Oregon shall release its mortgage lien against [the property]."

Kathleen Rawls, in her capacity as personal representative of the estate, and her husband, Grady Rawls, as successor in interest to the State of Oregon's lien, appeal from the judgment. The respondents on appeal are Zollman, the purchaser of the property, and Kenn Evans, the equitable lien holder. Also, Zollman cross-appeals, arguing that the trial court erred when it ruled that Zollman's petition for attorney's fees in the amount of $14,545 arising out of a provision of the earnest money agreement constitutes a claim

against the estate that has no priority as against the other creditors of the estate.

█    The trial court's judgment was entered pursuant to the court's memorandum opinion. Because that opinion sets out the history of litigation among the parties and the reasoning underlying the judgment, we set it out verbatim:

"This estate matter is back before the court on various contested issues. In resolving these issues, I believe it is helpful to review the history of the litigation involving this estate and the tract of land that is the primary asset in the estate.

"Prior to 1984, Ceciel Evans was the owner of a 160 acre ranch in Wallowa County near Joseph, Oregon. It is almost equally divided into parcels 'A' and 'B.'

"The first pertinent case involving the Evans Ranch and Ceciel K. Evans was a case entitled Ceciel K. Evans, plaintiff, vs. Kenn E. Evans and Mary B. Evans, defendants; Wallowa County Circuit Court case number 8847. The Stipulated Decree entered in that case gave Kenn Evans an 'equitable lien' in the entire ranch subject to a mortgage to Farm Credit Bank of Spokane (hereafter FLB), along with a right of first refusal to purchase said ranch. The Decree was entered on November 15, 1984, recorded in the Deed Records of Wallowa County on same date, and renewed on August 25, 1994.

"In March 1989, Ceciel Evans became a patient at a nursing home and began receiving financial assistance from the State of Oregon. Ms. Evans did not disclose ownership of the ranch. Had she done so, she would have [been] disqualified from receiving public assistance. As determined earlier by this Court, Ceciel Evans had 'an excess resource.' While receiving public assistance and residing in the nursing home, Ceciel Evans sold parcel 'A,' consisting of approximately 80 acres, on contract to the personal representative of this estate, Kathleen Rawls, and her husband for $67,750. As part of this contract, it was agreed that the FLB mortgage would be removed from parcel 'A' and placed only on parcel 'B.'

"Thereafter, sometime in 1991, the State became aware that Ceciel Evans had an 'excess resource' and began negotiations with Ceciel Evans' attorney-in-fact and current

personal representative, Kathleen Rawls, to remedy the situation. For reasons never explained by the State, it agreed to only take a mortgage against parcel 'B' and not seek to collect from the contract of sale on parcel 'A.' Further, as determined earlier by this Court, the State did not obtain a title report on parcel 'A' or otherwise concern itself with the extent of encumbrances on the property. It was just interested in collecting the net value of parcel 'B,' after the payment of all liens and encumbrances against the property and costs of sale.

"On or about January 15, 1993, Ceciel Evans, by and through Kathleen [Rawls], her attorney-in-fact, entered into a Sales Agreement and Receipt for Earnest Money (hereafter 'EMA') with Steven A. Zollman and Alpine Insurance Center, Inc. (hereafter 'Zollman') for the sale to Zollman of parcel 'B' for $93,000. The State agreed in writing to the sale for $93,000. At about that same time, the State and Ceciel Evans entered into an agreement in which it is noted that the State 'previously approved the purchase price of $93,000.' This agreement, to which Zollman was not a party, further provides that at closing proceeds would be used to pay the FLB mortgage, costs of sale and the remainder would go [to] the State for which the state would execute a satisfaction of mortgage. No mention was made of the equitable lien held by Kenn Evans nor were there any provisions made to somehow take care of this lien, although it was a matter of record at the time.

"Another lawsuit was then filed by Kenn Evans styled Evans v. Rawls, et al, Wallowa County Circuit Court Case No. 93-02-10392, in which Kenn Evans is plaintiff and Rawls and Zollman are defendants. In the suit, Evans objected to the sale to Zollman. Finally, after the expiration of about eleven months, the case settled on January 28, 1994 on the basis that the value of the Evans' equitable lien was specifically established at $40,187.50, that the lien would only apply to parcel 'B,' and, that the objections to the sale to Zollman would be withdrawn.

"The settlement in Evans v. Rawls resulted in another lawsuit filed in 1994; this time the suit was filed by the State as plaintiff and naming Ceciel Evans, Rawls and Zollman as defendants. This is Wallowa County Circuit Court Case No. 94-11-10712. In its complaint, the State alleges that the sale to Zollman was for inadequate consideration and thus the transfer should be set aside. The State

further alleged that the settlement in Evans v. Rawls should be set aside because the Evans equitable lien, by the terms of the settlement, applied only to parcel 'B,' instead of all of the Evans ranch, and, '[A]s a result of said settlement, the security held by the State of Oregon was drastically diminished.' When this case filed by the State came on for trial, the attorney for the state withdrew and agreed to dismissal of, 'All claims of the State of Oregon, Department of Human Resources, by and through the Director of the Adult and Family Services Division against all the parties, with prejudice.' (See Exhibit 1.)

"The counterclaims filed in case No. 94-11-10712 went to trial after the State withdrew and this Court concluded that the earnest money agreement of January 15, 1993 remained in full force and effect. I found that the time is of the essence clause contained in the EMA had been waived by the seller.

"This matter was back in court on May 6, 1996. Zollman requested the Court for instructions to the personal representative requiring the execution of a statutory warranty deed complying with the terms of the EMA. In the Opinion issued following the hearing, I found that the personal representative had not acted in good faith at clearing title and conveying a deed not subject to the encumbrances listed in the title report. I further ordered that the personal representative was to make no further efforts to terminate the EMA.

"A further hearing then followed in June 1996, in which the issue was whether the Evans lien was a valid encumbrance against the property and, if so, whether it was superior or inferior to the mortgage interest of the State. This Court ruled that the Evans lien was a valid encumbrance on the property and it was superior to the State's mortgage.

"Thereafter, to further complicate matters, the State satisfied its original mortgage and took another mortgage dated May 28, 1997 on parcel 'B' only. The mortgage is signed by Kathleen A. Rawls, personal representative, and is given to secure a note in the sum of $55,000, payable in monthly installments of $440.55 commencing July 1, 1997. It came out at the hearing on April 7, 1998, that Kathleen [Rawls] has personally been making these payments. She then asked in her Final Account for distribution of parcel 'B' to her. Such actions by Kathleen Rawls convinces this

Court that she has acted throughout this proceeding to advance her own self interest in violation of her fiduciary duty as personal representative. One of the reasons that I have outlined the history of this proceeding is to show how Kathleen Rawls, from the beginning, has made every effort to protect parcel 'A' from any liens or encumbrances by shifting them to parcel 'B,' and then using these liens on parcel 'B' to block the sale to Zollman. She testified that she now wants parcel 'B' to go to her. The State has been an active and willing accomplice to these improper and unacceptable actions by the personal representative.

"When the state replaced the first mortgage with the new mortgage for $55,000, it did so with no notice to Zollman although the State knew that such action would prejudice Zollman's interest in the property. The FLB lien is for approximately $40,000 and Kenn Evans' lien is also for about $40,000. The sale to Zollman was for $93,000, and the State now says it won't satisfy its mortgage unless paid the $55,000. Obviously, there is not enough money from the sale to satisfy this mortgage, and the State knew this fact when it took this replacement mortgage, which changed the very nature of the security.

"The problem with the State now insisting on full payment of this latest mortgage and thereby thwarting the sale of parcel 'B' is as follows:

"1)   At the time the State took its original mortgage, it did not obtain a title report to determine what liens and encumbrances were against the property because the State was only interested in the net value of this asset; if it had obtained a title report, the State would have known of both the FLB mortgage and the Evans' lien.

"2)   Before Zollman agreed to purchase the property, he was told by the State to provide proof [that] the sales price of $93,000 represented fair market value for the land. Zollman provided such proof and the State told him they would agree to the sale for this amount. Subsequently, Zollman entered into the EMA and has expended substantial sums of money litigating all the issues brought up to deprive him of the benefit of his bargain.

"3)   The State had legitimate concerns when it learned, after agreeing to the sale to Zollman, that the Evans' lien was for a considerable sum of money and that Rawls had transferred that lien all to parcel 'B.' The State correctly set

forth in its Complaint filed in Case No. 94-11-10712 that: 'As a result of said settlement, the security held by the State of Oregon was drastically reduced.' And, as further alleged in the Complaint, the sale to Zollman 'was for inadequate consideration.' If the State was improperly or unfairly [mislead] by the amount or consequences of the Evans' equitable lien, or genuinely felt it was misled by Zollman or others [as] to the true value of parcel 'B,' that was the time and place to litigate and resolve those issues. Instead, however, the State decided to dismiss all such claims with prejudice.

"4) The State had a right to substitute a new mortgage for the original, but not for an altogether different amount payable on new terms and all to the prejudice of Zollman.

"The personal representative has raised further issues such as the request for specific performance by Zollman is untimely and beyond the power of the probate court. Zollman has tried from the beginning to get the personal representative to fulfill her obligations to him, and his actions have been very timely. Under ORS 111.095, the probate court has full legal and equitable powers to carry out its determinations.

"Therefore, based on the foregoing, this Court concludes:

"1) The objections to the Final Account are sustained; the property known as parcel 'B' will not go to the personal representative as requested.

"2) This Court Orders and Decrees that the parcel 'B' property will be deeded to Zollman free and clear of all encumbrances and this will take place forthwith.

"3) From the proceeds of sale, the following shall be paid in this order: FLB mortgage; Evans' lien; Phyllis Evans' lien for $1,000, per stipulation in open court; taxes and reasonable costs of sale; and all remaining sums will be applied on the State's mortgage.

"4) The State is not precluded by this determination from seeking recovery of the indebtedness due it from the estate from any other asset now in, or properly belonging to, the estate.

"5) The Contract of Sale between Ceciel Evans and Rawls for parcel 'A' shall be properly accounted for in the inventory and Final Account."

On appeal, appellants make five assignments of error. The issues raised by those assignments of error begin with the assertion that the trial court lacked subject matter jurisdiction over Zollman's specific performance and declaratory judgment claims. We disagree. Under ORS 111.085(4), the jurisdiction of the trial court over probate matters includes the authority to determine title to and rights in property claimed by or against personal representatives. Further, the trial court has "full, legal and equitable powers to make declaratory judgments * * * in all matters involved in the administration of an estate" under ORS 111.095(2). We hold that those statutes grant to the trial court the authority to make the determinations regarding the enforceability and the priority of Zollman's and Kenn Evans's claims.

■ Next, appellants contend that the judgment is void because Zollman did not serve a summons along with the copy of his claim that he served on each interested party. According to appellants, that omission deprived the trial court of subject matter jurisdiction. Appellants rely on ORS 28.110, which provides:

> "[A]ll persons shall be made parties who have or claim any interests which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding."

All interested parties in this proceeding appeared and presented their arguments to the trial court. We hold that, inasmuch as the court had jurisdiction over the property in question and all interested parties appeared generally before it, the failure to serve the parties with summons did not deprive the court of jurisdiction in any respect. ORS 111.205 and ORS 115.175.

■ Next, appellants argue that Zollman's claim was time barred under the two-year statute of limitations in ORS 115.005(4).[1] Evans died in 1995. In that same year, the trial court determined that Zollman's earnest money agreement

---

[1] ORS 115.005(4) provides:

"Claims not presented within two years after the death of the decedent or within the applicable statute of limitations, whichever is earlier, are barred from payment from the estate."

was enforceable and that the personal representative was required to perform under its terms. On January 12, 1996, Zollman filed a request for instructions filed in the probate proceeding. That document requested that the court order the personal representative to execute and deliver a deed pursuant to the earnest money agreement, and that the order further establish priorities among the various lien and mortgage holders. It may be that Zollman never filed with the trial court a document entitled "Claim" within the two-year period after Evans's death. Nevertheless, we agree with the trial court that Zollman's request for instructions, in light of the court's prior determination that the personal representative was required to perform under the earnest money agreement, was the substantial equivalent of the filing of a claim against the estate and thereby satisfied the requirement of ORS 115.005(4) that claims against the estate be presented within two years after the death of the decedent.

Appellants also argue that the trial court erred in determining that Kenn Evans had a valid equitable lien against the property of the estate.[2] In 1984, decedent and Kenn Evans entered into a stipulated judgment which created an equitable lien on decedent's property. At that time, decedent's property included both parcels A and B. The issue of the validity of Kenn Evans's lien arose again in 1993 when he sued decedent, Kathleen Rawls (in her representative capacity), and Zollman before decedent's death. That action was resolved by a settlement agreement and a stipulated judgment, signed by Rawls as guardian *ad litem* and attorney-in-fact for decedent. The settlement agreement acknowledged the existence of the lien in the amount of $40,187 on parcel B, and released the lien from decedent's property except for parcel B. Then, the state filed an action in 1994, seeking to have the sale to Zollman set aside. However, before a trial on the merits occurred, the state voluntarily agreed to dismiss its action *with prejudice*. Now appellants seek to revisit the issue of the validity of Kenn Evans's lien in

---

[2] Appellants also argue that the trial court erred in entering judgment that Kenn Evans's lien was superior to the state's lien. However, while they assign error to this, they fail to present any argument as to why the trial court erred. Without any argument, we have no reason to disturb the trial court's judgment on that issue.

this proceeding. Respondents, in turn, argue that appellants are precluded from pursuing this issue because it has been previously litigated.

■     Our analysis requires us to separate out the individual appellants to resolve the issue framed by the parties. We address Kathleen Rawls's challenge first. She was not a party to any of the prior judgments except in her representative capacity as decedent's attorney-in-fact or guardian *ad litem*. However, the estate's interest and her interest as an heir in parcel B can be no greater than decedent's interest in the property at the time of death. Decedent was a party to the 1984 and 1994 settlement agreements and to the stipulated judgments that reflected those settlements, which arose out of two lawsuits involving Kenn Evans and decedent. Both agreements and both judgments acknowledge the existence of the lien. Nevertheless, Rawls, in her capacity as personal representative, argues that the estate is not bound by those agreements and judgments. She asserts that Kenn Evans's lien is not valid as to parcel B. In response to respondents' arguments that issue preclusion precludes her from challenging the validity of the lien, she argues that the issue of the validity of the lien has not been fully adjudicated. We disagree.

■■     Issue preclusion reflects the rule that when "a claim is litigated to final judgment, the decision on a particular issue or determinative fact [will be] conclusive in a later or different action between the same parties if the determination was essential to the judgment"[3] *North Clackamas School Dist. v. White*, 305 Or 48, 53, 750 P2d 485, *mod on recons* 305 Or 468, 752 P2d 1210 (1988).

---

[3] Moreover, the doctrine of judicial estoppel could operate on those facts. That doctrine provides that a party who has assumed one position by asserting a certain defense in one proceeding may not thereafter assume a contrary or inconsistent position in a subsequent proceeding by asserting a defense that is contrary to or inconsistent with its defense in the previous proceeding. *Bakker v. Baza'r, Inc.*, 275 Or 245, 271, 551 P2d 1269 (1976). In 1993, Kenn Evans asserted an equitable lien against property that included parcel B and named decedent as a defendant. Rawls, on behalf of decedent, later acknowledged the lien's existence in a settlement agreement that disposed of that litigation. Now, she reasserts as a defense to the enforceability of the lien the position that she apparently abandoned in the prior proceeding.

Issue preclusion applies when

"1. The issue in the two proceedings is identical.

"2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.

"3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.

"4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

"5. The prior proceeding was the type of proceeding to which this court will give preclusive effect." *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993) (citations omitted).

When considered together, the judgments resulting from the 1984 and 1994 litigation meet the above requirements. Those judgments clearly provide that Kenn Evans has an equitable lien on parcel B and, under the 1994 stipulated judgment, that the equitable lien is worth approximately $40,000. Allowing the personal representative to have another opportunity to contest Kenn Evans's lien would defeat the entire purpose of the doctrine of issue preclusion. *See Drew v. EBI Companies*, 310 Or 134, 142, 795 P2d 531 (1990) (policies underlying issue preclusion are to protect finality and prevent splitting). Moreover, the fact that the proceedings were resolved by stipulation, rather than by a full trial on the merits, is not a bar to the application of issue preclusion. *Roth v. Garner*, 157 Or App 400, 405, 970 P2d 675 (1998). We conclude that the estate is barred from challenging the validity of Kenn Evans's lien because of issue preclusion.

██ On the other hand, Grady Rawls, as the assignee of the state, was not a party to any of the previous settlements or stipulated judgments. Consequently, the state and he cannot be bound by their terms. Nevertheless, we agree with respondents that Grady is precluded from attempting to invalidate the lien because the state, Grady's predecessor in interest, dismissed with prejudice its action to have the sale to Zollman and the 1993 judgment set aside. In Oregon,

" '[A] dismissal with prejudice normally creates a *res judicata* bar to any major action.' *Te-Ta-Ma Truth Foundation v. Vaughan*, 114 Or App 448, 451, 835 P2d 938

(1992). Thus: 'The term "with prejudice," expressed in a judgment of dismissal, has a well-recognized legal import; and it indicates an adjudication of the merits, operating as *res judicata*, concluding the rights of the parties, terminating the right of action, and precluding subsequent litigation of the same cause of action, to the same extent as if the action had been prosecuted to a final adjudication adverse to the plaintiff.' 46 Am Jur 2d 883, Judgments, § 609 (1995) (citing cases)." *Sandgathe v. Jagger*, 165 Or App 375, 380-81, 996 P2d 1001 (2000).

Because the state brought an action against the parties in 1994 asking that the 1993 agreement that gave Kenn Evans a lien be set aside, but thereafter dismissed its action with prejudice, that dismissal operates to prevent subsequent litigation of any issues that could have been determined in the 1994 action. It follows that, because Grady Rawls stands in the shoes of the state in that regard, he is precluded from challenging the validity of Kenn Evans's lien.

In their final argument, appellants argue that the trial court erred in entering a judgment against the state and ordering that parcel B be transferred to Zollman free and clear of the state's mortgage lien. We understand appellants to argue that, in ordering parcel B to be transferred to Zollman free and clear of encumbrances and in limiting the state's mortgage lien to the remaining sums of the proceeds, the trial court deprived the state of its ability to recover the full amount of its $55,000 mortgage. As discussed above, in 1996 the personal representative was ordered by the trial court not to take any further actions to terminate the earnest money agreement. The court also determined that the earnest money agreement was still in full force and effect. It appears from the record that the state was on notice as to those determinations. Despite the court's order, the personal representative entered into another agreement with the state in 1997, in which it agreed to further encumber parcel B in such a manner that the earnest money agreement could no longer be performed.[4] It is that agreement and the lien that arises therefrom on which Grady Rawls now relies.

---

[4] The earnest money agreement could no longer be performed because it requires that the land pass unencumbered. Between the liens of Farm Credit Services, Kenn Evans, and the state, the $93,000 sale price would not be sufficient

■    We are unconvinced that the trial court lacked the authority to determine that the state was limited to the remaining sums of the proceeds of parcel B. Both the state and the personal representative were on notice through an order of the trial court that the personal representative was to take no further actions to terminate the earnest money agreement. By entering into the second mortgage agreement with the state, the personal representative effectively did exactly what she had been ordered not to do. The trial court, exercising its probate jurisdiction, has all the general authority, legal and equitable, to enforce its determinations, orders, and judgments. *See* ORS 111.095(1). Thus, we see no reason why, in this instance, the trial court could not enforce its 1996 order through its equitable powers by, in effect, canceling, in part, the state's mortgage lien.

Our conclusion is supported by the fact that the state previously agreed to the $93,000 sale price and to receive the proceeds that remained after the liens were satisfied—or, in other words, exactly what the trial court ordered. It also agreed to release its security interest on parcel B once the sale was completed. At the time that the state entered into its agreement, it was unaware that Kenn Evans had an equitable lien because it had neglected to obtain a title search. When the state learned of the lien, rather than taking action to set aside the agreement it had made with Kathleen Rawls, it sued Zollman, the personal representative, and decedent, and then ultimately dismissed its action with prejudice. Probate proceedings ensued upon decedent's death, and the trial court twice ruled during those proceedings that the agreement with Zollman remained in full force and effect. It was after those rulings, to which the state was a party, that the state entered into the unauthorized agreement with Rawls that resulted in the second mortgage lien. Equity aids the vigilant, it does not relieve a party from the consequence of its own neglect. *Churchill v. Meade,* 92 Or 626, 637, 182 P 368 (1919). Under the circumstances, it was appropriate for the trial court to exercise its equitable powers to limit the effect of an unauthorized agreement that could have been avoided

---

to satisfy those. Thus, without the court's order that the state release its lien against parcel B, parcel B would transfer with a lien still on it.

had the state obtained a title search that would have disclosed Kenn Evans's lien. In other words, the court under ORS 111.095(1) had the statutory authority to do equity, and we agree with its decision in that regard.

Zollman cross-appeals the trial court's refusal to abate the purchase price in the amount of attorney fees awarded to Zollman in enforcing his claim for specific performance. Appellants respond that the trial court correctly denied abatement of the purchase price. They contend that to do so would have been to the detriment of the other lien holders of the estate because, if Zollman were allowed to abate the purchase price, it would elevate him to a priority that "impairs the value of those superior liens."

ORS 88.050 requires that, when there are competing lien holders, the court shall decree the order of priority of those liens. The trial court followed the dictate of that statute, ruling that Farm Credit Bank's lien on parcel B was first, Kenn Evans's equitable lien was second, and the state's mortgage was third. To allow Zollman to obtain his attorney fees out of the $93,000 purchase price would be to elevate him above the other superior lien holders, who in turn could end up with unsatisfied liens. Consequently, the trial court did not err in refusing to allow Zollman to abate the purchase price.

Affirmed on appeal and cross-appeal.