Argued and submitted February 12, affirmed June 30, 2004

## Donna M. MILLER,
### Randy S. Miller, and Robert W. Miller,
*Appellants,*

*v.*

## TICOR TITLE INSURANCE CO.,
*Respondent.*

02C-13515; A120022

93 P3d 88

Gordon R. Hanna argued the cause for appellants. With him on the briefs was Gordon Hanna, P.C.

Jonathan M. Radmacher argued the cause for respondent. With him on the brief were Trung D. Tu and McEwen Gisvold, LLP.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

LINDER, J.

**LINDER, J.**

Plaintiffs, three family members (the Millers), brought this indemnity action against defendant Ticor Title Insurance Co. (Ticor), claiming that Ticor failed to reimburse them fully for damages covered by a policy of title insurance. The trial court granted Ticor's motion for summary judgment, and the Millers appealed. We affirm.

The material facts are not in dispute. In September 1999, the Millers purchased from the Strickfadens three adjoining lots bordering the Willamette River. The Millers obtained a title insurance policy on the property from Ticor. After the Millers made the purchase, a neighbor, Cummings, asserted a claim of ownership to a portion of the property that, if successful, would have cut off at least some of the Millers' river access. The Millers contacted Ticor. Ticor investigated the claim and determined that Cummings had record title to a portion of the property as he claimed. The Strickfadens, however, maintained that, notwithstanding Cummings's record title, title to the disputed portion of the property had vested in them under various theories, including adverse possession.

The Millers decided to bring an action to quiet title. In conjunction with that decision, they and the Strickfadens agreed that, if the quiet title action did not establish the Millers' legal title to the disputed property, the Strickfadens would repurchase the property. Ticor joined in that agreement and further agreed to pay the Millers' costs in the quiet title action. The quiet title action resulted in a stipulated judgment that quieted title to the disputed property in the Millers, subject to a restrictive covenant in favor of Cummings that, among other provisions, limited the Millers' use of the disputed portion of the property to use as a footpath and required them to maintain the natural growth of trees, brush, and plants in specified ways.

After entry of the stipulated judgment in the quiet title action, the Millers filed this action against Ticor, alleging that Cummings's claim of ownership and the restrictive covenant granted in settlement of that claim gave rise to damages covered by the title insurance policy that Ticor

had not paid. The Millers sought damages of two kinds: (1) $15,000 for the loss of value in the property; and (2) $78,759 for loss of use of the property for the period during which Cummings's claim was unresolved. One month after the Millers filed the complaint, Ticor tendered to the Millers $15,000 for the amount that the covenant had reduced the value of the property. The Millers accepted the tender and, after doing so, notified Ticor that they were waiving the demand in their complaint for that amount.

Ticor moved for summary judgment. In support of the motion, Ticor asserted that, because it had paid the Millers the amount that the parties had agreed represented the diminished value of the property caused by the restrictive covenant, the Millers had been paid all that they were entitled to under the limits of the title insurance policy. In response, the Millers argued that their claim for loss-of-use damages remained at issue, asserting that the policy covered that loss in addition to their loss for the diminished property value resulting from the restrictive covenant.

The trial court agreed with Ticor that the payment of $15,000 to the Millers fully compensated them under the policy. The trial court therefore granted the motion for summary judgment, reasoning that the Millers' "claim for additional damages fails as a matter of law because the limits of the policy have been paid." After the court issued its letter opinion but before it entered judgment for Ticor, the Millers moved to file an amended complaint. Ticor objected. The trial court denied the motion to amend and entered judgment for Ticor. The Millers then filed this appeal.

■ In their first assignment of error, the Millers challenge the trial court's grant of summary judgment. In doing so, they assert that the $15,000 loss-of-value payment that they accepted did not exhaust the limits of the policy coverage. They further assert that their damages for loss of use of the property during the period that Cummings's claim was unresolved was an insurable loss under the policy. Consequently, the Millers contend, the trial court should not have granted summary judgment against them. In response, Ticor does not dispute, at least for present purposes, that the Millers incurred damages in the form of loss of use of the

property. Ticor does, however, assert that the policy did not cover losses of that kind. Ticor also asserts, as the trial court concluded, that the maximum coverage under the policy is $15,000 as a matter of law.

■ ■  Whether the Millers may recover loss-of-use damages under the title insurance policy in addition to the loss-of-value damages resulting from the restrictive covenant depends on the provisions of that policy. A title insurance policy is a contract for indemnity insurance, the interpretation of which presents a question of law. *See generally Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992) (discussing insurance policies generally). To determine an insurance policy's meaning, Oregon courts use a familiar and settled methodology, the goal of which is to ascertain the intent of the parties, based on the terms and conditions of the policy. *Id.*; *Totten v. New York Life Ins. Co.*, 298 Or 765, 770-71, 696 P2d 1082 (1985). The analysis begins with an examination of the plain meaning of the policy's terms, turns next to the context in which those terms appear, and, as a last resort, applies the rule of interpretation against the drafter of the language to resolve ambiguity. *Hoffman Construction Co.*, 313 Or at 469-70.

The title insurance policy in this case contains two key provisions relating to damages. The first is a provision describing the types of loss or damage covered by the policy. In particular, the policy states that, "[s]ubject to the [policy's] * * * conditions and stipulations," it insures

"against loss or damage, not exceeding the amount of insurance stated in Schedule A [$660,000], sustained or incurred by the insured by reason of:

"1.  Title to the estate or interest described in Schedule A being vested other than as stated therein;

"2.  Any defect in or lien or encumbrance on the title;

"3.  Unmarketability of the title[;]

"4.  Lack of a right of access to and from the land."

The second key provision limits Ticor's liability under the policy. It appears in subsection 7 of the section entitled "Conditions and Stipulations," and provides, in part:

"This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

"(a) The liability of the Company under this policy shall not exceed the least of:

"(i) the Amount of Insurance stated in Schedule A [$660,000]; or

"(ii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy."

Those two provisions, in combination, place important limits on the policy's coverage. Under the first provision, the policy insures against "loss or damage" arising from the enumerated kinds of defects or deficiencies in the title. But Ticor's liability for such loss or damage is not boundless. Rather, by force of the second provision, Ticor's liability for covered losses is capped at either $660,000 (the amount of insurance in Schedule A) *or* the difference between the value of the property as insured and the value of the property subject to a defect covered by the policy, *whichever is less*. In other words, no matter the extent of actual monetary damages the Millers might have incurred due to an insured loss, Ticor is not obligated to indemnify them beyond those monetary limits.

Under the straightforward terms of the policy, and on the record before us, Ticor's limit of liability is $15,000, as the trial court concluded. That conclusion follows from two undisputed facts. First, the restrictive covenant was not in the title that Ticor insured. Thus, it represents an insurable loss—that is, "a defect in or lien or encumbrance on the title"—as provided in the policy provision set out above. Second, before trial, the parties agreed that the property as burdened by the restrictive covenant was worth $15,000 less than it was worth without the restrictive covenant. Thus, to use the language of the policy itself, $15,000 represents "the

difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by [the] policy." That amount, in turn, is the *extent* of Ticor's liability against monetary loss. Necessarily, then, as the trial court concluded in granting summary judgment, the Millers have been paid the full amount owed under the policy.

The Millers, however, advance two theories for why that conclusion is wrong. First, the Millers assert that Cummings's claim of ownership during the quiet title litigation limited their ability to use their property for more than a year, resulting in loss-of-use damages. According to the Millers, the policy covers *all* loss or damage sustained or incurred by the insured because of a defect in or lien or encumbrance on the property and thus encompasses loss-of-use damages. We need not decide whether the Millers are correct that loss-of-use damages are recoverable in addition to or in lieu of loss-of-value damages. Under the express terms of the policy, the *extent* of Ticor's liability is the difference between the value of the property as insured and the value with the defect, lien, or encumbrance. Ticor has paid the Millers $15,000 for the reduced value of their property with the restrictive covenant. If the restrictive covenant is the "defect, lien or encumbrance," the Millers have been paid all that they are due under the policy, because $15,000 is the cap on Ticor's liability, even if the Millers suffered other covered losses.

The second theory that the Millers advance for avoiding that conclusion essentially is that the defect in title covered by the policy was Cummings's claim of ownership, not the restrictive covenant. Cummings's claim, according to the Millers, caused losses in addition to and different from those caused by the restrictive covenant. The Millers argue that Cummings's claim of ownership was "reduced * * * to a restrictive covenant," and that the restrictive covenant alone could not be the full measure of damages, because it did not come into being until January 2001, 16 months after the title insurance policy issued. According to the Millers, the loss in value attributable to the restrictive covenant captures only the losses from the date of the restrictive covenant forward,

not losses that they incurred before that point as a result of the claim that ultimately became the restrictive covenant. Thus, they argue, the $15,000 they accepted for the loss of value caused by the restrictive covenant is not the full measure of the loss-of-value damages owed to them.

■ We reject the Millers' argument in that regard because we do not agree that Cummings's *assertion* of ownership qualifies as a "defect in title" against which the policy insures.[1] The policy is written in terms of insuring against loss resulting from "any defect in or lien or encumbrance on the title." That language requires a title defect, lien, or encumbrance on the property, not a mere claim or an unfounded assertion of one. In other words, a *claim* against the title is not enough.

Regardless of whether, in other circumstances, a mere claim of ownership might suffice as a defect in title, section 9 of the policy makes clear that, when the claim is resolved through litigation, Ticor is obligated to indemnify the Millers only for damages based on the reduced property value caused by the defect in title as established in the litigation. Specifically, section 9(b) provides:

> "In the event of any litigation, including litigation by [Ticor] or with [Ticor's] consent, [Ticor] shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title as insured."

That provision expressly precludes Ticor from incurring any liability for a defect in title until after litigation involving the title has been finally resolved. By implication, if not expressly, it limits Ticor's liability to the amount of the loss in value caused by the defect in title established by the litigation.

---

[1] That is not to suggest that Cummings's claim of ownership has no significance under the policy. The policy obligates Ticor to "pay the costs, attorneys' fees and expenses incurred in defense of the title, as insured." Given that provision, a claim of ownership likely obligates Ticor to defend against the claim, as Ticor did in this case by paying Millers' costs in connection with the quiet title action.

Section 9(a) reinforces that conclusion. It provides that, if litigation "removes the alleged defect, lien or encumbrance," Ticor will be deemed to "have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby." Necessarily, under that section, until litigation is pursued to resolution, it cannot be determined whether Ticor has "fully performed" and, thus, it cannot be determined whether Ticor is liable for any damages. In combination, sections 9(a) and (b) of the policy establish that, when litigation is brought to resolve an asserted defect in title, Ticor's liability is limited to damages based on the reduced property value caused by the defect as established in the litigation.[2]

In this case, the record does not permit a conclusion that Cummings's claim of *ownership* was a defect in the title to the property. Cummings's claim was disposed of by the quiet title action, which culminated in a stipulated judgment imposing a restrictive covenant on the land for Cummings's benefit. Whatever *claim* Cummings may have asserted initially (*i.e.*, a claim of ownership), the judgment in the quiet title action conclusively resolved the nature of his interest. Said another way, the quiet title action established that the restrictive covenant is all the interest that Cummings ever had in the property and precluded Cummings from asserting any greater interest. *See Rawls v. Evans*, 182 Or App 75, 85-86, 48 P3d 159, *rev den*, 335 Or 42 (2002) (stipulated judgment establishing equitable lien on property preclusively established parties' rights in the property). Necessarily, then, the restrictive covenant is the only defect in the title that gives rise to damages covered by the policy—*viz.*, the $15,000 that the parties agree represents the reduced value of the property with the restrictive covenant. Consequently, the trial court's grant of summary judgment on the ground that $15,000 was the limit of liability under the policy was correct.

---

[2] The Millers rely on section 9(a) to argue that, by negative implication, the policy suggests that Ticor should be liable for all interim damages that may arise from an alleged defect in title except when litigation fully cures the defect. We disagree. Their reading of the section depends on viewing it in isolation. Viewed in the context of related provisions of the policy, to imply liability for prelitigation or other interim damages—especially through negative inference—would be unwarranted.

That analysis effectively disposes of the Millers' second and third assignments of error as well. In their second assignment of error, the Millers argue that the trial court abused its discretion in denying their motion to amend the complaint after the grant of summary judgment in favor of Ticor. The amended complaint would have recharacterized the loss-of-use damages as loss-of-value damages. Although the Millers acknowledged that they had received $15,000 for the loss of value attributable to the restrictive covenant, they asserted that they were entitled to additional loss-of-value damages caused by Cummings's claim of ownership while that claim was pending.[3] But, as we have explained in resolving the Millers' first assignment of error, the title insurance policy does not permit the recovery of damages for reduced value based on Cummings's *claim* of ownership. Ticor's indemnification obligation is limited to damages caused by the defect in the title as established through litigation—that is, to the $15,000 loss in value caused by the restrictive covenant. We therefore need not decide whether the trial court abused its discretion in denying the motion to amend the complaint because, in all events, the denial did not prejudice the Millers' rights. *See Shoup v. Wal-Mart Stores, Inc.*, 335 Or 164, 61 P3d 928 (2003) (trial court's ruling will not be reversed on appeal unless the error substantially affects the rights of the moving party). Thus, there is no basis for reversal.

For the same reason, the Millers' third assignment of error provides no basis for reversal. They assert that the trial court erred in failing to strike an affidavit attached to Ticor's response to the motion to amend, claiming that the affidavit included privileged settlement materials. That argument assumes that the affidavit was prejudicial to the Millers because it led to the denial of their motion to amend. But, as we have concluded, the denial of the Millers' motion to amend their complaint did not substantially affect their

---

[3] We note that the Millers have not contended, either at trial or on appeal, that the $15,000 payment for the restrictive covenant fails to compensate them properly for the reduction in value based on the restrictive covenant. Rather, their argument is that Cummings's claim of ownership reduced the value of their property substantially more than did the restrictive covenant and that the further reduction in value attributable to Cummings's claim, as opposed to the actual property right he was granted in the quiet title action, entitles them to further compensation.

rights. It follows that, even assuming that the trial court should have granted the motion to strike the affidavit, its failure to do so had no adverse impact on the Millers' rights.

Affirmed.