Argued and submitted February 8,
affirmed as modified June 2, 1980

E. CARL SCHIEWE, INC.,
*Respondent,*
*v.*
BRADY, et al,
*Appellants.*

(No. A7803-04007, CA 13126)

611 P2d 1184

David P. Roy, Portland, argued the cause for appellant. With him on the brief was Black, Helterline, Beck & Rappleyea, Portland.

David P. Weiner, Portland, argued the cause for respondent. With him on the brief was Samuels, Samuels, Yoelin & Weiner, Portland.

Before Joseph, Presiding Judge, and Richardson and Warren,* Judges.

JOSEPH, P. J.

---

*Warren, J., *vice* Lee, J., deceased.

## JOSEPH, P. J.

Plaintiff, a construction company, brought suit to foreclose a construction lien for the balance owing for labor and materials it supplied under a contract to remodel part of defendants' building into a dental laboratory.[1] Defendants Brady, Semler and Nudelman alleged as an affirmative defense that plaintiff failed in several respects to perform the remodeling work according to contract specifications; they also counterclaimed under the contract's provision for payment of damages for delay by reason of failure to complete the work by the specified completion date. Defendant Davis' separate answer merely denied the complaint's allegations and requested no relief.

The trial court found in favor of plaintiff on its suit and against defendants Brady, Semler and Nudelman (hereafter "defendants") on their counterclaim. (The court had earlier granted plaintiff's motion for a voluntary nonsuit against defendant Davis.) The trial court also awarded attorney fees to plaintiff in the amount of $2,500, and in a separate order it awarded costs, including attorney fees in the amount of $100, to defendant Davis. Defendants appeal from the foreclosure decree, the denial of their counterclaim for damages and from the award of attorney fees. Defendant Davis appeals his award of attorney fees, claiming the amount awarded was unreasonably low. We modify the judgment and decree for plaintiff to delete the award of attorney fees and otherwise affirm it as modified. We vacate the award of attorney fees to defendant Davis.

Defendants attack the validity and the amount of plaintiff's lien, claiming the evidence does not support the trial court's finding that plaintiff performed the work specified in the remodeling contract. Defendants

---

[1] Plaintiff joined with its suit a separate cause of action against defendant Brady to recover the price of a "plaster bin" that plaintiff constructed for the laboratory at defendants' request. The trial court found for plaintiff on that claim. No claim of error has been raised about that matter.

specifically contend only that plaintiff failed properly to prepare one of the laboratory's walls for painting and that plaintiff failed to install properly the laboratory's air conditioning, ventilation and heating equipment.

Defendants showed that some new paint peeled in places from one of the laboratory's walls and contend that the cause was plaintiff's nonperformance of the contract's "Wall and Ceiling Repair" provision.[2] The gist of that provision is that plaintiff was to prepare the surface of the wall for painting. The only explanation of the cause of the peeling paint was the expert testimony of the painting subcontractor. He testified that the problem was due to the disintegration of a coat of calcimine or casein base paint applied many years ago, which had since been covered by four to six coats of other kinds of paint. According to the expert, calcimine paint has little bonding agent or "vehicle" in it and so may eventually break down into a powdery film that is highly soluble in water. The peeling began in the winter months of 1977, when the remodeled rooms were heated after being cold for some time, and it was the expert's opinion that water vapor caused by the heating up penetrated and expanded behind certain weak spots in the coat of calcimine paint, break-

---

[2] The provision reads:

"SECTION 9196 - WALL & CELING [sic] REPAIR - 11

"9196 -A GENERAL

"Repair all existing wall and ceiling surfaces and leave in condition to receive paint by others.

"9196-B WORK

"Repair walls flush with adjacent finish where base and wainscot is removed. Remove nailing strips before patching.

"Repair walls and ceilings flush with adjacent surfaces where partitions have been removed.

"Remove all loose paint and fill all holes in existing walls and ceilings flush with adjacent surfaces.

"9196-C CLEANUP

"Remove all debris from site and leave walls and ceilings ready for paint."

ing the film of later applied paint and causing all subsequent coats of paint to peel. We are convinced that the peeling paint was not caused by failure to prepare the wall's surface for painting, but by a fracturing of the wall's subsurface which was unconnected with plaintiff's performance. There was no breach of the contract in that respect.

The second issue concerning plaintiff's performance is whether plaintiff properly installed the laboratory's cooling, ventilation and heating equipment. Both the project architect and the consulting mechanical engineer who actually designed the systems testified unequivocally that the equipment was installed according to the plans and specifications. The only contrary evidence admitted or even offered was the testimony of a second consulting mechanical engineer, who testified that some "piping to the airconditioning unit was not installed as specified" and that some valves in the heating equipment were disassembled or not installed. The ventilation equipment was not mentioned.

The evidence of improper installation is not convincing. Aside from the imprecision and omissions in his testimony, defendant's witness on cross-examination could not even recall the date he inspected plaintiff's work, other than that "it was before July of 1978," some six months after the remodeling work was completed. The record as a whole shows that the equipment was properly installed.

Defendants raise a related issue by their contention that they were prejudiced when the trial court refused to allow them to elicit testimony that the cooling, ventilation and heating systems failed to operate properly. While conceding that proper installation of the equipment rather than the adequacy of the systems' design is the issue in this case,[3] defendants argue that

[3] Defendants Brady, Semler and Nudelman also filed a third-party complaint against the architect who prepared the laboratory's plans and specifications, alleging *inter alia* that the cooling, ventilation and heating systems did not operate properly because they were negligently designed. The third-party action was severed from the suit under the former ORS 11.060 (now in substance ORCP 53 B) for a separate trial.

improper installation may be inferred from operational deficiencies and that it was therefore error to exclude evidence of the latter. The answer to the argument is that the operational deficiencies also may raise an inference that the systems were improperly designed, and prior to trial the court ruled that evidence going to the systems' design (the adequacy of which was a principal issue in the severed third-party action by defendants against the architect) would not be permitted in this suit. That pretrial ruling is not challenged here.

Moreover, in *State Highway Comm. v. Carmel Est.,* 15 Or App 41, 51, 514 P2d 1124 (1973), this court held that:

> "In determining prejudicial effect of error the appellate court looks to the entire record [citation omitted]. A ruling, in order to warrant reversal, must not only be erroneous, but also must be prejudicial."

To the same effect, *see Fassett v. Santiam Loggers, Inc.,* 267 Or 505, 509, 517 P2d 1059 (1973). The record here demonstrates neither error nor prejudice. Defendants were never denied the opportunity to inquire as to whether the systems' equipment was properly installed *per se,* and the record reveals they in fact had ample opportunity to make such an inquiry.

Defendants assign error to the trial court's denial of their counterclaim for damages. The pertinent parts of the delay damages provision found in the contract's Supplemental General Conditions are:

> "If the said Contractor shall neglect, fail or refuse to complete the work within the time herein specified or any proper extension thereof granted by the Owner, then the Contractor does hereby agree, as a part consideration for the awarding of this contract, to pay the Owner the amount specified in the Contract, not as a penalty but as liquidated damages for such breach of contract as hereinafter set forth, for each and every calendar day that the Contractor shall be in default after the time stipulated in the contract for completing the work.
> "* * * * *

[446]

"* * * *Provided,* That the Contractor shall not be charged with liquidated damages or any excess cost when the delay in completion of the work is due:
* * * * *

"(b) To unforeseeable cause beyond the control and without the fault or negligence of the Contractor, including, but not restricted to, acts of God, or of the public enemy, acts of the Owner, acts of another Contractor in the performance of a contract with the Owner, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually severe weather; * * *

*"Provided, Further,* that the Contractor shall, within ten (10) days from the beginning of such delay, unless the Owner shall grant a further period of time prior to the date of final settlement of the contract, notify the Owner, in writing, of the causes of the delay, who shall ascertain the facts and extent of the delay and notify the Contractor within a reasonable time of its decision in the matter."

The completion date specified by the contract was August 28, 1977. The completion date in fact was January 17, 1978. Defendants assert entitlement to damages for noncompletion of the work by the specified completion date, pointing out that the completion date could be extended only by a written Change Order signed by the owner and the architect and that no such Change Order was ever executed.[4] The issue, however, is not whether the completion date was extended, but whether delay in completion was excused under the proviso in the damages provision just quoted.

---

[4] The change order provision is found in the printed General Conditions of the Contract for Construction, Section 12.1.1:

"A Change Order is a written order to the Contractor signed by the Owner and the Architect, issued after execution of the Contract, authorizing a change in the Work or an adjustment in the Contract Sum or the Contract Time. The Contract Sum and the Contract Time may be changed only by a Change Order. A Change Order signed by the Contractor indicates his agreement therewith, including the adjustment in the Contract Sum or the Contract Time."

Though the record on this point leaves much to be desired, what evidence there is shows that the delay was caused by "acts of the Owner," defendant Brady, and "acts of another Contractor in the performance of a contract with the Owner." A delay of 35 days from August 28 to October 2, is accounted for by Brady's request after the contract was executed to change color of "Colorlith" countertop material, the delay being the extra time required to order the material and have it delivered. Brady had employed another contractor to install some dust disposal equipment in the laboratory, and plaintiff was further delayed through October 7 by that other contractor's failure to do certain work in preparation for installing the equipment. The period from October 7 through January 17 is accounted for by the fact that up through December 15, Brady occupied and used as a temporary laboratory at least three of the rooms that plaintiff was to remodel and delayed moving into the remodeled rooms because another contractor had not installed certain laboratory equipment. When Brady did finally vacate the rooms, plaintiff immediately began the remaining work, and that work was extensive.

As for the requirement in the second proviso quoted above that "the Contractor shall, within ten (10) days from the beginning of such delay * * * notify the Owner, in writing, of the causes of the delay," the circumstances surrounding the delay were such that defendants had actual knowledge of the reasons therefor and additional written notice by the plaintiff would have been an empty formality. The Supreme Court held in *Brownson v. Lewis and Bunnell,* 233 Or 152, 157-58, 377 P2d 327 (1962), that "[a]ctual notice can, in some circumstances, dispense with formal 'notice'." In 1 Merrill, Notice § 505, at 480 (1952), it is said:

"If it is simply for the purpose of giving information, or of creating a likelihood that information will be received by the noticee, knowledge, which accomplishes this end, is an acceptable substitute [for written notice].

"* * * * *"

[448]

It is abundantly clear that defendants knew a 35-day delay in completion of the work would result from their decision to change the color of the colorlith material. As for the period following October 7, we cannot imagine why defendants needed notice from plaintiff of their own acts and those of their other contractor. Supported by substantial evidence, the trial court properly rejected defendants' counterclaim. *McClory v. Gay,* 45 Or App 561, 608 P2d 1213 (1980).

The last two assignments of error challenge the awards of attorney fees to plaintiff and to defendant Davis. The award in each case was made under ORS 87.060(4):

> "* * * In suits to enforce a lien created by ORS 87.010 the court shall allow as a part of the costs a reasonable amount as attorney fees to the prevailing party, except as provided in subsection (2) of ORS 87.039 and subsection (3) of ORS 87.057."

Defendants contest the award of attorney fees to plaintiff on the ground that plaintiff failed to respond to defendant's demand under ORS 87.057(2)[5] and is

---

[5] Because the subsections of ORS 87.057 are interrelated, the statute is set out below in its entirety:

"(1) A person intending to commence suit to foreclose a lien shall deliver to the owner of the property upon which the lien is claimed and to the mortgagee a notice in writing not later than 10 days prior to commencement of the suit, stating that such person, or others, intends to commence suit to foreclose the lien. Notice delivered to the mortgagee who received the notice required by ORS 87.025 shall be deemed in compliance with this subsection, unless the person giving notice has actual knowledge of a change of mortgagee.

"(2) Where a notice of intention to commence suit to foreclose a lien has been given as provided by subsection (1) of this section, the sender of the notice upon demand of the owner shall furnish to the owner within five days after the demand a list of the materials and supplies with the charge therefor, or a statement of a contractual basis for the owner's obligation, for which a claim will be made in the suit to foreclose.

"(3) A plaintiff or cross-complainant seeking to foreclose a lien in a suit to foreclose shall plead and prove compliance with subsections (1) and (2) of this section. No costs, disbursements or attorney fees otherwise allowable as provided by ORS 87.060 shall be allowed to any party failing to comply with the provisions of this section."

[449]

thus precluded by ORS 87.057(3) from recovering attorney fees.

The record shows that defendants' demand on plaintiff was made on February 27, 1978, but fails to disclose any response thereto by plaintiff. The absence of a response in the record is explained in the briefs by plaintiff's counsel as due to inadvertence of counsel at trial, in that the response was not introduced into evidence. Although plaintiff attached a copy of that response as an appendix to its brief, it is nevertheless not part of the record of this case, and we must disregard it. *McFarland v. Oregon Electric Ry. Co.,* 70 Or 27, 31, 138 P 458 (1914). We also note that plaintiff failed to plead compliance with ORS 87.057(2), as required by ORS 87.057(3). Plaintiff's recovery of attorney fees was barred by ORS 87.057(3), and the trial court's award was error.

The trial court also awarded $100 for attorney fees to defendant Davis upon the granting of plaintiff's motion against him for a voluntary nonsuit. The basis for the award of fees is not clear. As best we can determine, counsel for Davis became ill during a 10-day recess and had to undergo major surgery. The recess was extended. The motion for voluntary nonsuit was served during the extension. Counsel for the other defendants contacted Davis' counsel and requested a continuance for consideration of the motion. The continuation was denied, and the motion was allowed. The order on the motion granted the nonsuit on certain conditions, among which were 1) that Davis would be awarded his costs and disbursements and 2) that the issue of attorney fees would be deferred. The terms of that order are not challenged, but the record of the hearing leaves no doubt but that the entitlement to attorney fees, as well as the amount, was left for later resolution by the agreement of everyone. In post trial proceedings the attorney fees issue was argued and briefed. The trial court awarded the challenged fee, presumably, under ORS 87.060(4). The court indicated that the amount was set as low as it was because it felt

that had Davis stayed in the case as a defendant his interest in the property would have been subjected to the lien and foreclosed. However, the other condition of the granting of the nonsuit was: "Any Decree of Foreclosure granted \*\*\* would be subordinate to defendant Davis' interest in the real property;". The foreclosure decree incorporated that priority.

Defendant Davis contends the amount of the award of fees was unreasonable, *i.e.,* too little. ORS 87.060(4) authorizes an award of attorney fees to "the prevailing party" in a suit to foreclose a lien as a part of costs, and therefore it is not necessary to plead a basis for an award — "except as part of the prayer." *Pritchett v. Fry,* 286 Or 189, 191, 593 P2d 1133 (1979); *Tiano v. Elsensohn,* 268 Or 168, 169, 520 P2d 358 (1974); *see also, Shipler v. Van Raden,* 288 Or 735, 747, 608 P2d 1162 (1980). It was noted earlier that defendant Davis' answer contained no prayer for relief, nor did his pleading otherwise request an award of costs or attorney fees. Given the Supreme Court's language in the cited cases, we conclude that the trial court erred in making any award of attorney fees to Davis, even though the plaintiff was otherwise informed of his claim of entitlement at an early stage. *See Dean Vincent, Inc. v. Krishell Lab.,* 271 Or 356, 360, 532 P2d 237 (1975).

The decree of foreclosure is modified by deletion of the award of attorney fees, and affirmed as modified. The award of attorney fees[6] to defendant Davis is vacated.

Affirmed as modified.

---

[6] Plaintiff does not challenge the allowance of other costs.