Argued and submitted August 1, reversed and remanded in part, otherwise affirmed on appeal; reversed and remanded with instructions on cross-appeal November 6, 2002

## SAFEPORT, INC.,
an Oregon corporation,
*Respondent - Cross-Appellant,*

*v.*

## EQUIPMENT ROUNDUP & MANUFACTURING, INC.,
an Oregon corporation,
*Appellant - Cross-Respondent,*

## EQUIPMENT ROUNDUP & MANUFACTURING, INC.,
an Oregon corporation,
*Third-Party Plaintiff - Appellant - Cross-Respondent,*

*v.*

## Clay ALLEN,
*Third-Party Defendant - Respondent - Cross-Appellant,*

*and*

## PIONEER TRUST BANK,
*Third-Party Defendant - Respondent.*

98C-10775; A112787

60 P3d 1076

Robert J. Miller argued the cause for appellant - cross-respondent. With him on the briefs were Brien F. Hildebrand and Moomaw, Miller & Hildebrand, LLP.

Thomas J. Murphy argued the cause for respondents - cross-appellants Safeport, Inc. and Clay Allen. With him on the briefs was Scott ▪ Hookland LLP.

No appearance for respondent Pioneer Trust Bank.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

BREWER, J.

## BREWER, J.

Defendant Equipment Roundup & Manufacturing, Inc., appeals a judgment foreclosing its construction lien. It assigns error to the trial court's denial of its request for attorney fees and to the court's denial of its motion to reopen the record and amend its pleading to comply with statutory requirements for an award of attorney fees. Defendant also assigns error to the trial court's grant of priority over defendant's lien and its costs and disbursements in this action. Finally, defendant challenges the dismissal of its *quantum meruit* claim against the owner of the foreclosed property. Plaintiff Safeport, Inc., cross-appeals, assigning error to the trial court's denial of its request for a jury trial on its breach of contract claim. On defendant's appeal, we reverse and remand with respect to the denial of attorney fees and otherwise affirm. On plaintiff's cross-appeal, we reverse and remand.

Plaintiff is a corporation, the sole shareholder of which third-party defendant Clay Allen serves as plaintiff's president. Allen owns real property on which plaintiff sought to establish a dry-land boat storage business. Plaintiff contracted with defendant to assemble a rack structure that would hold and store boats. Plaintiff agreed to make payments to defendant as the work progressed. During the construction process, problems arose that required extra work. Defendant performed the extra work with plaintiff's approval, but plaintiff later disputed that it was responsible for the charge for that work, which amounted to $20,142.49. Plaintiff also objected that the structure did not meet the specifications required by the contract and informed defendant that it would not make any more payments. As a result, defendant stopped work and filed a construction lien against the improvement and real property for $84,662.49, the amount of the original contract plus the charge for the extra work, less the amount of payments it had already received. Citing ORS 87.057(2), plaintiff demanded a list of materials and supplies with the charges therefor and a statement of the contractual basis for the owner's obligation. In its written reply, defendant asserted that ORS 87.057(2) requires a lien

claimant to furnish such a list *or* a statement of the contractual basis, and it further stated that the original contract provided the basis for plaintiff's obligation. In addition, defendant included with its written response a list itemizing the labor and material costs for the extra work.

Plaintiff then brought this action against defendant for breach of contract, breach of warranty, breach of the duty of good faith and fair dealing, fraud, and negligence. Plaintiff demanded a jury trial. In its answer, defendant asserted counterclaims for breach of contract based on the amount unpaid on the contract and for *quantum meruit*. Defendant also brought a third-party claim against Allen and Pioneer Trust Bank (bank), seeking to foreclose its construction lien against the real property and alleging a superior interest to bank's mortgage lien against the property. In addition, defendant alleged a *quantum meruit* claim against Allen, asserting that Allen would be unjustly enriched if he were permitted to retain the benefit of the improvement without paying for its reasonable value.

On defendant's motion for summary judgment, the trial court dismissed all of plaintiff's claims except for its breach of contract claim. The court bifurcated defendant's lien foreclosure counterclaim from the parties' contract claims, trying the lien foreclosure claim first. After the foreclosure trial, the court concluded that the lien was valid. The court found that defendant had substantially performed the contract, that it had installed the structures in a good and workmanlike manner, and that any further performance by defendant was excused by plaintiff's refusal to pay for the work already performed.

In a post-trial hearing, the court awarded defendant the amount of the lien claim less $8,100 for remaining work to be performed under the contract. The court also concluded that plaintiff did not have a right to a jury trial on its breach of contract claim, because ORS 87.060(3) directs that, if the lien is allowed, the court will resolve all other pleaded issues. Having concluded in the lien foreclosure proceeding that defendant had not breached the contract, the court dismissed plaintiff's breach of contract claim. The court also dismissed

defendant's *quantum meruit* claim, concluding that defendant had failed to sustain its burden of proof with respect to that claim.

Defendant then submitted a statement for attorney fees. After conducting an evidentiary hearing, the court determined that an award of attorney fees was justified but nevertheless declined to make such an award because defendant had failed to plead and prove that it had furnished plaintiff with a list of materials and the charge therefor or a statement of contractual basis for the lien, as required by ORS 87.057(3).

Finally, the court determined that defendant's lien was entitled to priority over bank's mortgage, but only as to the segregated portion of the labor charge, $12,980.75. The court found that defendant had failed to provide bank with notice of the materials portion of the charge. The court awarded defendant its costs and disbursements but did not provide that those costs were entitled to priority over bank's mortgage.

## ATTORNEY FEES

We begin by addressing defendant's assignments of error relating to the denial of its petition for attorney fees. Defendant argues that the trial court erred in denying attorney fees pursuant to ORS 87.060(5), which provides:

"When notice of intent to foreclose the lien has been given, pleaded and proven as provided for in ORS 87.057, the court, upon entering judgment for the lien claimant, shall allow as part of the costs all moneys paid for the filing or recording of the lien and all moneys paid for title reports required for preparing and foreclosing the lien. In a suit to enforce a lien perfected under ORS 87.035 the court shall allow a reasonable amount as attorney fees at trial and on appeal to the party who prevails on the issues of the validity and foreclosure of the lien."

ORS 87.057, in turn, provides, in part:

"(2) Where a notice of intent to foreclose a lien has been given as provided by subsection (1) of this section, the sender of the notice upon demand of the owner shall furnish to the owner within five days after the demand a list of the

materials and supplies with the charge therefor, or a statement of a contractual basis for the owner's obligation, for which a claim will be made in the suit to foreclose.

"(3) A plaintiff or cross-complainant seeking to foreclose a lien in a suit to foreclose shall plead and prove compliance with subsections (1) and (2) of this section. No costs, disbursements or attorney fees otherwise allowable as provided by ORS 87.060 shall be allowed to any party failing to comply with the provisions of this section."

In its first assignment of error, defendant argues that it is not a plaintiff or cross-complainant within the meaning of ORS 87.057(3) but, instead, is a third-party plaintiff. Therefore, defendant argues, any failure on its part to comply with subsection (3) cannot justify the denial of attorney fees under ORS 87.060. In its second assignment of error, defendant argues, in part, that, even if ORS 87.057 does apply to it as a third-party plaintiff, the trial court erred in concluding that defendant did not prove compliance and erred in denying defendant's motion to amend the pleadings to conform to the evidence. Defendant asserts that it offered sufficient evidence to prove that it complied with ORS 87.057(2). As defendant notes, the trial court declined to award attorney fees, not because plaintiff did not receive the required information but because the court found that defendant did not plead and prove that it had provided the information.

■ We need not address defendant's first assignment of error because we conclude that, even if ORS 87.057 does apply here, defendant proved compliance with its requirements, and the trial court erred in denying defendant's motion to amend its pleading to conform to that evidence. Plaintiff does not challenge defendant's assertion that it submitted to the trial court the evidence required by the statute. Indeed, both plaintiff and defendant attached copies of the relevant documents to their submissions in connection with plaintiff's motion for partial summary judgment. Instead, plaintiff urges that, because the summary judgment motion was unsuccessful, the evidence did not become part of the *relevant* record. Plaintiff asserts that defendant had to present evidence of its purported compliance at trial, or no later

than the post-trial hearing on its attorney fee claim, and that defendant failed to do so.

■    On the last point, plaintiff is mistaken. ORCP 68 C(4)(c)(i) provides that, in an attorney fee proceeding, "[t]he parties shall be given a reasonable opportunity to present evidence and affidavits relevant to any factual issue." That rule relaxes, in part, the format for the presentation of evidence in an attorney fee proceeding. In keeping with that principle, at the conclusion of the attorney fee hearing, the trial court directed the parties to submit memoranda on several issues, including whether defendant had satisfied the conditions for an award of attorney fees pursuant to ORS 87.060(5). In its memorandum, defendant specifically incorporated its response to the summary judgment motion. Plaintiff presented no countervailing evidence.

    In its motion for partial summary judgment, plaintiff argued that it, rather than defendant, was entitled to attorney fees because the documents that defendant submitted were insufficient to satisfy the requirements of ORS 87.057(2). Plaintiff first asserted that that statute entitled it to *all* of the information described therein, including both a list of materials with itemized charges *and* a statement of the contractual basis for its obligation, rather than one or the other. It further asserted that, if it was not entitled to both, the documents provided by defendant contained different amounts for the charges for the extra work that defendant performed. Plaintiff summarized its argument, stating, "The dispute herein lies in the interpretation of ORS 87.057. This is a pure question of law * * *."

    ORS 87.057(2) unambiguously provides that, on demand by the property owner, a lien claimant must furnish "a list of the materials and supplies with the charge therefor, *or* a statement of a contractual basis for the owner's obligation * * *." (Emphasis added.) Defendant's response to plaintiff's demand included a statement of the contractual basis for both the original contract and the extra work. On *de novo* review, ORS 19.415(3), we conclude that defendant proved that it had provided the information required by ORS 87.057(2).

■ However, our analysis does not end there. In addition to *proving* that it complied with the statute, defendant was required to *plead* compliance. Defendant argues that the trial court erred in denying its motion to amend its third-party complaint to conform to the evidence it presented in the attorney fee proceeding. We review that decision for abuse of discretion. *Contractors, Inc. v. Form-Eze Systems, Inc.*, 68 Or App 124, 129, 681 P2d 148, *rev den*, 297 Or 824 (1984).

ORCP 23 governs the amendment of pleadings. ORCP 23 B provides:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendments of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice such party in maintaining an action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

Importantly, ORCP 23 A provides, in part, that "leave [to amend] shall be freely given when justice so requires."

All that stands between defendant and an award of attorney fees is the necessary pleading. In its opinion letter following the hearing on attorney fees, the trial court stated:

"This case is one where the award of attorneys fees against the plaintiff would, in the court's opinion, be clearly justified. Plaintiff's prosecution of this case was overly aggressive and protracted in nature. Plaintiff and plaintiff's first attorney were advised of this early on by the presiding judge first assigned to this case and this court which subsequently presided over the trial of the case. A two day trial extended to five days. Plaintiff's case on foreclosure of the

construction lien was presented in a repetitive and rambling manner which lacked focus and organization. Plaintiff's second counsel was left in the unenviable position of trying to retry the construction lien case when the court later decided the remaining claims. This took additional time, which would have been unnecessary if the case had previously been presented in a straight forward manner. The court finds [expert witness's] testimony regarding the reasonableness of defendant's attorneys fees in terms of hourly rates and time spent to be credible."

In spite of its determination that an attorney fee award was "justified," the trial court denied recovery, citing *E. Carl Schiewe, Inc. v. Brady*, 46 Or App 441, 611 P2d 1184 (1980). In *E. Carl Schiewe, Inc.*, we reversed the trial court's award of attorney fees to a claimant that had failed to plead and prove that it had responded to the defendant's demand under ORS 87.057(2). The claimant offered evidence of its compliance with the statute for the first time on appeal but never filed a motion to amend its pleading. Thus, the claimant's effort failed both the pleading and proof prongs of the statutory requirement. The circumstances here are materially different; defendant offered evidence that it had complied with the statute, and it also moved to amend its pleading to conform to that evidence.

Although the trial court "has broad discretion in determining when justice requires amendment to a complaint," *Contractors, Inc.*, 68 Or App at 129, that discretion is not unlimited. In *Ramsey v. Thompson*, 162 Or App 139, 147, 986 P2d 54 (1999), *rev den*, 329 Or 589 (2000), we reversed a trial court's denial of a motion to amend a party's pleading. We identified

"four considerations bearing on the appropriate exercise of discretion: (1) the nature of the proposed amendments and their relationship to the existing pleadings; (2) the prejudice, if any, to the opposing party; (3) the timing of the proposed amendments and related docketing concerns; and (4) the colorable merit of the proposed amendments."

With respect to the first consideration, we noted that "the proposed amendments were not the product of some unilateral effort by petitioner to interject entirely new claims into

the litigation. Rather, \* \* \* they were proffered to cure deficiencies that defendant identified." *Id.* at 147. Similarly, in this case, defendant's motion to amend did not introduce any new claims but, instead, sought to cure a pleading omission.

Regarding the second *Ramsey* consideration, plaintiff suggests that it would be prejudiced if defendant's motion were granted because it did not have an opportunity to offer evidence contradicting defendant's assertion that it complied with the statute. However, plaintiff has identified no particular prejudice that it would suffer if the amendment were allowed. We confronted the same argument in *Ramsey*, where the defendant claimed prejudice because it had not " 'expended resources in preparing a defense to those claims.' " *Id.* We noted, "Absent from that generic assertion, which could apply to *any* amendment, is any description of *how* defendant would be prejudiced." *Id.* (emphasis in original). In this case, not only did plaintiff fail to object to the admission of the evidence that defendant had complied with ORS 87.057(2), plaintiff itself previously had offered the same evidence in support of its own motion for summary judgment. Clearly, both parties recognized that the issue was in contention between them. *See Holmes v. Oregon Assn Credit Mgmt.*, 52 Or App 551, 558, 628 P2d 1264, *rev den*, 291 Or 771 (1981).[1] In any event, because plaintiff does not identify any further evidence that it might have proffered, its vague claim of prejudice is not well taken.

Regarding the third *Ramsey* consideration, the timing of the proposed amendment, plaintiff notes that, when defendant filed its motion to amend, more than two years had passed since it filed its original pleading. Plaintiff relies on

---

[1] In *Holmes*, we held that the trial court abused its discretion in denying a motion to amend the pleadings:

"Both parties recognized that [the subject of the motion], pled in the reply, was an issue in the case. Defendants made no claim of prejudice in their objection to the receipt of the evidence. Further, they had an opportunity to offer evidence in rebuttal, had they chosen to defend on the merits. Under the rule, even evidence objected to will not prohibit an amendment, and the court should freely grant the amendment '\* \* \* when the presentation of the merits of the action will be served thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice such party \* \* \*. [ORCP 23 B.]' "

*Holmes*, 52 Or App at 558.

*Downs v. Waremart, Inc.*, 137 Or App 119, 903 P2d 888 (1995), *rev'd in part on other grounds*, 324 Or 307, 926 P2d 314 (1996). In *Downs*, we affirmed the trial court's denial of the plaintiff's motion to amend the complaint based on the age of the case and the fact that the motion to amend was made fewer than 30 days before trial. *Id.* at 140-41. But in *Downs*, the plaintiff sought to add an entirely new legal theory to her complaint. In contrast, here, defendant merely sought to amend its pleading to include facts demonstrating compliance with the procedural requirements of ORS 87.057.

ORCP 23 B directs that amendment of the pleadings to conform to the evidence "may be made upon motion of any party at any time, *even after judgment*." (Emphasis added.) *See Hussey v. Huntsinger*, 72 Or App 565, 569, 696 P2d 580 (1985) (adopting a rule for amendment of pleadings "which will produce decisions on the merits rather than setting procedural traps for the parties"); *see also McAmis Industries v. M. Cutter Co.*, 161 Or App 631, 636, 984 P2d 909, *rev den*, 329 Or 553 (1999) (allowing supplemental answer where issues raised in the answer were fully and fairly litigated and no prejudice to the other party resulted); *Mund v. English*, 69 Or App 289, 292, 684 P2d 1248 (1984) (finding abuse of discretion even though the plaintiff sought to amend its allegations after trial). Because plaintiff asserts no cognizable prejudice with respect to the timing of defendant's motion to amend, the third factor favors allowance of the motion.

With respect to the fourth consideration, the colorable merit of the proposed amendment, we have already noted that all that stands between defendant and an award of attorney fees is the proper pleading.

After considering the relevant factors governing the trial court's discretion, we conclude that the court erred in denying defendant's motion to amend its pleading to allege compliance with ORS 87.057(2). Accordingly, we reverse and remand for entry of a judgment awarding attorney fees to defendant. ORS 87.060(5).

## JUDGMENT PRIORITY

In its fourth assignment of error, defendant asserts that the trial court erred in not awarding it priority to the

extent of the full amount of the foreclosed lien because, in defendant's view, ORS 87.025(3) does not require a contractor filing a lien for both materials and labor to provide notice of the lien to a holder of a recorded mortgage. Defendant's argument concerns the meaning of ORS 87.025. *Community Bank v. U. S. Bank*, 276 Or 471, 478, 555 P2d 435 (1976). In accordance with the methodology required by *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), we examine the text of the statute in context and, if necessary, its legislative history and other aids to construction. When examining statutory context, "relevant are any prior judicial decisions construing the statutory language at issue." *Cooksey v. Portland Public School Dist. No. 1*, 143 Or App 527, 531, 923 P2d 1328, *rev den*, 324 Or 394 (1996) (citing *State v. Sullens*, 314 Or 436, 443, 839 P2d 708 (1992)).

■    ORS 87.025(3) provides:

"No lien for materials or supplies shall have priority over any recorded mortgage or trust deed on either the land or improvement unless the person furnishing the material or supplies, not later than eight days * * * after the date of delivery of material or supplies for which a lien may be claimed delivers to the mortgagee either a copy of the notice given to the owner under ORS 87.021 to protect the right to claim a lien on the material or supplies or a notice in any form that provides substantially the same information as the form set forth in ORS 87.023."

The Supreme Court construed ORS 87.025(3) in *Benj. Franklin S & L v. Hallmark*, 257 Or 436, 479 P2d 740 (1971), on facts similar to those present here. A mortgagee lent money for the construction of an improvement and recorded a mortgage to secure the debt. The owner contracted with the defendants to furnish both labor and materials. After the owner failed to pay, the defendants filed a lien without itemizing the charges for labor separately from those for materials. The issue on appeal was "what the effect is upon the priorities where the lien lumps *both labor and materials* and no notice of the delivery of materials has been given to the mortgagee." *Id.* at 438 (emphasis in original). The court compared the provisions requiring notice to owners and to mortgagees,[2]

---

[2] The owners' notice provisions were renumbered in 1975 when the legislature repealed ORS 87.020 and enacted ORS 87.021 in its place. Or Laws 1975, ch 466,

noting that neither requires notice of labor performed, but that

> "the owners' notice statute[ ] has a provision that ORS 87.025, the mortgagees' notice statute, does not. [The owners' notice statute] provides that where the lien is for both labor and materials, no notice is necessary to secure a lien that is prior to the owner's interest. This subsection was added by [Oregon Laws 1967, chapter 602, section 1]. No similar section was added to ORS 87.025."

*Benj. Franklin S & L*, 257 Or at 439 (footnote omitted). The court concluded that "it was not the intention of the legislature to relax the notice requirements to mortgagees, where both labor and materials were furnished, as it relaxed them in relation to owners." *Id.* at 440. *Benj. Franklin S & L* thus makes clear that a lien claimant must provide a prior mortgagee with notice of materials provided, whether or not labor is also provided. Because defendant did not provide notice to bank, it lost priority except as to the separately itemized labor charges, which require no notice.

■ Defendant suggests that *Benj. Franklin S & L* is inapposite because the owners' notice statute in effect when it was decided did not include the commercial improvement exception now found in ORS 87.021(3)(b). Although ORS 87.021(3)(b) limits the notice exception to liens involving commercial improvements, the previous embodiment of that exception—*former* ORS 87.020(5) (1967)—applied to *any* improvement. ORS 87.021(3)(b) narrowed the circumstances under which notice to owners is not required. However, ORS 87.025(3) still lacks an exception for commercial improvements. Contrary to defendant's argument, later legislative enactments will not be interpreted as superseding prior judicial decisions unless the legislative intent to do so is clear. *See U.S. National Bank v. Heggemeier*, 106 Or App 693, 699, 810 P2d 396 (1991) ("[I]n the light of existing case law, the failure of the legislature expressly to change the law is evidence of a legislative intention not to change it."). No such legislative intent is manifest here.

---

§ 7. *Former* ORS 87.020(5) was amended, limiting the notice exception to commercial improvements, Or Laws 1981, ch 757, § 3, and was renumbered as ORS 87.021(3)(b). Or Laws 1987, ch 662, § 1.

■      Defendant also argues that it was not required to give bank notice because ORS 87.025(3) requires a contractor to deliver to a mortgagee

> "a copy of the notice given to the owner under ORS 87.021 to protect the right to claim a lien on the material or supplies or a notice in any form that provides substantially the same information as the form set forth in ORS 87.023."

Defendant contends that, because ORS 87.021(3)(b) excused it from providing notice to the owner, it was also excused from providing notice to the mortgagee. The trial court correctly held, however, that the phrase "or a notice in any form" in ORS 87.025(3) defeats defendant's contention. That phrase provides an alternative means of giving notice in the event that, as here, the lien claimant did not give notice to the owner. A mortgagee's entitlement to notice does not depend on whether the owner received notice.

■      Defendant urges that, even if it was required by ORS 87.025(3) to give notice, we should excuse that requirement because bank was apprised of the construction project and, by making a telephone call, or by visiting the project site, bank could have obtained much more information than it would have received from the statutory notice. Whether or not that is so, we cannot accept defendant's implicit invitation to engraft such an exception onto the statute. *See* ORS 174.010 (enjoining courts "not to insert what has been omitted, or to omit what has been inserted").

Defendant also contends that the Supreme Court created an exception to the statutory notice requirement in *Hays v. Pigg*, 267 Or 143, 148, 515 P2d 924 (1973). There, the court upheld a lien that contained unsegregated lienable and nonlienable charges, holding that the owners

> "had sufficient knowledge with which to question the amount of the lien * * *, and they would not have been prejudiced by a lack of information in settlement prior to the commencement of the suit. A simple question would have supplied sufficient information concerning the status of the settlement."

Defendant argues that, in this case, bank had sufficient knowledge to make a similarly simple inquiry. In *Hays*, however, the owners received notice of the lien, albeit notice that required asking a "simple question" to clarify. Here, bank received no notice whatsoever. Accordingly, *Hays* does not assist defendant.

Because defendant failed to provide bank with notice of defendant's right to a lien, defendant was not entitled to priority for materials charges and for labor charges that were lumped together with materials charges. The trial court correctly held that only the itemized labor portion of the lien was entitled to priority over bank's mortgage.

## PRIORITY OF COSTS AND DISBURSEMENTS

In its fifth assignment of error, defendant contends that the trial court erred in denying its costs and disbursements priority over bank's mortgage against the property. Defendant argues that ORS 87.060(5) entitles it to recover costs associated with its lien claim and that, because the trial court granted a portion of the judgment on the lien claim priority over bank's mortgage, its costs and disbursements also should have priority.

ORS 87.060(5) provides for an award of costs and disbursements and, where appropriate, attorney fees to a party who prevails on the issues of the validity and foreclosure of a construction lien. Because defendant prevailed over plaintiff and Allen on the lien claim, its costs and disbursements are entitled to priority over those parties' interests in the property. However, that conclusion does not resolve the priority dispute between defendant and bank.

No statute or case law addresses that issue directly. However, in general, a trial court has discretion whether or not to award any costs and disbursements. ORCP 68 B. As between defendant and bank, the court did not abuse its discretion in denying priority to defendant's lien.

Defendant and bank were opposed only with respect to the issue of lien priority. The result was mixed, but it tilted, if at all, against defendant. Defendant prevailed over bank's mortgage only as to $12,980.75 of its lien claim. Bank prevailed with respect to the remainder of defendant's lien

recovery, $62,581.74. The trial court did not abuse its discretion in denying lien priority to defendant's judgment for costs and disbursements.

## QUANTUM MERUIT

Defendant assigns error to the portion of the judgment dismissing its *quantum meruit* claim against Allen. In particular, defendant challenges the trial court's determination that defendant failed to satisfy its burden of proving that Allen had been unjustly enriched at defendant's expense. We consider the evidence in the light most favorable to Allen, the prevailing party, and reverse only if there is no evidence to support the trial court's decision. *Brown v. Zimbrick Logging*, 273 Or 463, 466, 541 P2d 1388 (1975).

A claim for *quantum meruit* is a quasi-contractual claim. *Robinowitz v. Pozzi*, 127 Or App 464, 467, 872 P2d 993, *rev den*, 320 Or 109 (1994). The elements of the claim are a benefit conferred, awareness by the recipient that a benefit has been received, and judicial recognition that, under the circumstances, it would be unjust to allow retention of the benefit without requiring the recipient to pay for it. *Jaqua v. Nike, Inc.*, 125 Or App 294, 298, 865 P2d 442 (1993). The parties' arguments cover considerable legal acreage, but we need consider only one of them. Allen argues that defendant is not entitled to *quantum meruit* recovery because it successfully foreclosed its lien against the improvement. Defendant asserts that lien foreclosure is not a claimant's exclusive remedy, that it is entitled to money judgments on both the lien and the *quantum meruit* claims, and that it should have the choice of satisfying the sums owed it from either source.

Allen relies on two decisions of this court. In the first, *A-C Construction, Inc. v. Bakke Corp.*, 153 Or App 41, 956 P2d 219, *rev den*, 327 Or 553 (1998), the plaintiff subcontractor filed both a lien foreclosure claim and a *quantum meruit* claim. We affirmed the judgment foreclosing the lien. We noted that, "[b]ecause plaintiff has recovered the amount owed under the contract in its lien foreclosure action, we need not reach the alternative argument on the *quantum meruit* claim." *Id.* at 52 (citing *King v. All Pro Services, Inc.*, 120 Or App 479, 484, 852 P2d 943 (1993)).

In the second case, *Tum-A-Lum Lumber v. Patrick*, 95 Or App 719, 770 P2d 964 (1989), the defendant property owner hired a contractor to build a barn, and the plaintiff supplied materials to the contractor for use in the construction. The contractor ceased work before the barn was finished, and the defendant did not pay for the materials. Instead of filing a construction lien or suing the contractor directly, the plaintiff filed a *quantum meruit* claim against the property owner. We held that "a material element that must be alleged and proved for a claim of unjust enrichment to succeed is that the remedies against the contractor were exhausted." *Id.* at 721. Because "[n]o direct contractual relationship existed between the parties * * *, a furnisher of materials must exhaust all remedies against the contractor *before* the 'enrichment' can be 'unjust.' " *Id.* at 722 (emphasis in original). In a footnote, we noted that

> " '[a] statute that is particularly addressed to situations of unjust enrichment may also preclude a claim to restitution, though the claim would otherwise be maintainable * * *[. By] providing remedies for certain cases of the type it deals with, the statute may be held to foreclose additional or more extensive relief in those cases, or to foreclose restitution in other cases of the same type.' "

*Id.* at 722 n 3 (quoting *Restatement (Second) Restitution* § 1 comment j (1983)).

Contrary to Allen's assertion, neither of the foregoing decisions stands for the proposition that lien foreclosure inevitably is the claimant's exclusive remedy. Where, for example, the lien claimant does not recover the entire award from the foreclosed property, the property owner could be unjustly enriched if it were permitted to retain the full value of the improvement without compensating the claimant for the unrecovered portion of the judgment. In this case, for example, it could unfold that the foreclosure judgment will not satisfy both bank's interests and defendant's. However, the record does not support such speculation. To the contrary, because there is no evidence that defendant will be unable to satisfy its entire judgment from the foreclosed property, the record amply supports the trial court's determination that Allen has not been unjustly enriched. Accordingly, the trial

court did not err in dismissing defendant's *quantum meruit* claim.

## JURY TRIAL

On cross-appeal, plaintiff assigns error to the trial court's judgment dismissing its breach of contract claim. Plaintiff argues that the court erroneously construed ORS 87.060(3) and thereby deprived plaintiff of its constitutional right to a trial by jury. We review issues of statutory construction for errors of law. *Holbrook v. Precision Helicopters, Inc.*, 162 Or App 538, 541, 986 P2d 646, *rev den*, 329 Or 527 (1999). In doing so, we employ the *PGE* methodology. *PGE*, 317 Or at 610-12.

In its complaint, plaintiff requested a jury trial, a request that it repeated in other pleadings, in several written jury trial demands and memoranda, and orally before the court. In a status conference order, the court expressly found that plaintiff had not waived its right to a jury trial. The court bifurcated defendant's lien claim and all other claims, ordering that the lien claim be tried first and expressly reserving any remaining jury issues for resolution at a later date.

ORS 87.060(3) provides:

"In a suit to enforce a lien perfected under ORS 87.035, the court shall allow or disallow the lien. *If the lien is allowed, the court shall proceed with the foreclosure of the lien and resolve all other pleaded issues.* If the lien is disallowed, and a party has made a demand for a jury trial * * *, the court shall impanel a jury to decide any issues triable of right by a jury. All other issues in the suit shall be tried by the court."

(Emphasis added.) To resolve the lien claim, the court was required to decide whether defendant had breached the parties' contract because "[a] construction lien may not be had by one who has failed to substantially perform his part of a contract." *Welch v. Webb*, 47 Or App 771, 775, 615 P2d 391 (1980). Having determined that defendant was entitled to foreclose the lien, the trial court purported to "resolve all other pleaded issues," in accordance with ORS 87.060(3). In so doing, the court dismissed plaintiff's breach of contract claim.

Plaintiff argues that the court misconstrued ORS 87.060(3) in contravention of Article VII, section 3, of the Oregon Constitution, which provides:

"In actions at law, * * * the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict[,]"

as well as Article I, section 17, which provides that, "[i]n all civil cases the right of Trial by Jury shall remain inviolate."

■ Plaintiff does not dispute the trial court's authority to bifurcate the parties' respective claims for trial as it did. However, plaintiff asserts that the court lacked authority to decide plaintiff's contract claim. Plaintiff reminds us that either party to a breach of contract claim is entitled to demand a jury trial. *Molodyh v. Truck Insurance Exchange*, 304 Or 290, 744 P2d 992 (1987). Plaintiff argues that its right to a jury trial could not be defeated by defendant's lien claim, an equity claim to which the right to a jury trial does not attach.

Plaintiff relies on *Molodyh*, where the defendant insurance company asserted that a jury trial was unavailable to the plaintiff policyholder, because the amount of the plaintiff's loss was determined by a statutory appraisal process that the defendant previously had initiated. *Id.* at 299. The Supreme Court upheld the plaintiff's right to a jury trial, concluding that the statutory process was not binding on the party that had not demanded it. *Id.*

"[T]o so conclude in respect of the non-demanding party, to which the appraisal provision is mandatory, would offend the right to jury trial. One party may not unilaterally decide to have someone other than a jury determine the issues and thereby destroy the other's right to a jury trial."

*Id.*; *see also Jackson County Federal Savings v. Urban Planning*, 95 Or App 598, 605, 771 P2d 629, *rev den*, 308 Or 197 (1989) ("[A] party who desires a jury trial on a legal defense or counterclaim brought in an equitable proceeding is entitled to one.").

Implicit in plaintiff's position is the premise that a jury could reach a different conclusion from the court's determination as to whether defendant breached the contract. Discrepancies between trial court findings and jury findings are permissible, plaintiff argues, citing *DeWitt-Erickson Const., Inc. v. Moran Const. Co.*, 86 Or App 474, 739 P2d 1071, *rev den*, 304 Or 280 (1987). In *DeWitt-Erickson Const., Inc.*, a subcontractor brought claims for lien foreclosure and breach of contract. Both claims were tried simultaneously, the lien claim to the court and the contract claim to a jury. The jury returned a verdict in the plaintiff's favor, but the court disallowed the lien, finding that the plaintiff had not substantially performed the contract. *Id.* at 476. The defendant appealed, arguing that the court was required to decide the validity of the lien first and that the court's finding, as the law of the case, controlled both claims. *Id.* at 477. We affirmed, concluding that, by pleading separate claims for lien foreclosure and breach of contract "and agreeing to try the claims together, plaintiff took itself out of ORS 87.060(3) on the legal issues. Its right to a jury trial did not arise from failure of the lien, but from the independent contractual claim." *DeWitt-Erickson Const., Inc.*, 86 Or App at 478. We noted that, "[w]hen the trial court found, contrary to the verdict, that plaintiff had not substantially performed, the only effect of its finding was to disallow the lien." *Id.*

Explaining the effect of ORS 87.060(3) on cases involving both lien claims and contract claims, we said:

"ORS 87.060(3) governs the procedure in an equitable action to foreclose a lien; *it is irrelevant to a legal action for breach of contract*. The statute provides a remedy to a party which is *unable to prove the validity of a lien*, often because of a technical failure which does not affect the underlying claim. It codifies a judicially created rule which originated at a time when a plaintiff could not combine an equitable lien claim with a legal contract claim in the same action. Under the statute, a party whose lien fails may fall back on a contract or *quantum meruit* claim if the facts pleaded will support it. The party does not need to plead a separate claim; it is subsumed under the action to foreclose the lien."

*Id.* at 477-78 (footnote omitted; emphasis added).

*Westwood Corp. v. Bowen,* 108 Or App 310, 815 P2d 1282 (1991), *rev dismissed,* 312 Or 589 (1992), also is instructive. There, the plaintiff contractor initiated an action to foreclose a construction lien and also alleged a fall-back claim for breach of contract. The defendant landowner counterclaimed, also alleging breach of contract. As in *DeWitt-Erickson Const., Inc.,* all claims were tried simultaneously, the foreclosure claim to the court and the contract claims to the jury. *Westwood,* 108 Or App at 313. Once again, the court and the jury reached different results, the jury finding more favorably for the defendant. *Id.* at 314. On appeal, the defendant argued that the jury's determination bound the trial court under principles of claim preclusion. *Id.* We rejected the argument, explaining that "lien foreclosure issues and contract issues are triable to different factfinders, and neither's findings bind the other." *Id.* at 317.

The only significant procedural difference between *Westwood* and this case is that, in *Westwood,* the issues were not severed for separate trials. Relying on that distinction, defendant asserts that the bifurcation procedure followed in this case created a posture analogous to the trial of separate actions. Therefore, defendant reasons, unlike in *Westwood,* the doctrine of claim preclusion gives primacy to the trial court's determination that it had not breached the contract. Defendant is mistaken. In *Westwood,* we stated that "[i]t is of no assistance in resolving that issue to say that the question is within the exclusive province of the first one that happens to answer it." *Id.* at 315. Consistently with that statement, it is settled in Oregon that no preclusive effect is given to the resolution of a claim before judgment is entered. *See Rawls v. Evans,* 182 Or App 75, 85, 48 P3d 159 (2002); *Office Services Corp. v. CAS Systems, Inc.,* 63 Or App 842, 845, 666 P2d 297, *rev den,* 295 Or 773 (1983). In this case, the trial court resolved all of the claims before entering a single final judgment disposing of the action. Therefore, preclusion principles are inapposite.

Our construction of ORS 87.060(3) in *Westwood* is supported by the Supreme Court's decision in *Ralph Allen,*

*Inc. v. Lumpkin,* 279 Or 71, 566 P2d 872 (1977). In that case, the plaintiff contractor sued to foreclose a construction lien and the defendants filed counterclaims, two of which were claims for breach of contract. The parties agreed to try one of the breach of contract claims to a jury. The trial court entered judgment for the plaintiff on the lien foreclosure claim, and the defendant appealed from that judgment. The Supreme Court affirmed, noting that "[t]he defendants still have their action pending against the plaintiff on the law side of the court." *Id.* at 83. The trial court must have decided both breach of contract claims in the plaintiff's favor before foreclosing the lien. Hence, the court's statement that the action was still pending on the law side of the court meant that a judgment upholding the lien did not preclude a later trial on the breach of contract claim.

Taken together, *DeWitt-Erickson Const., Inc., Westwood,* and *Ralph Allen, Inc.,* support a construction of ORS 87.060(3) that limits the trial court's authority to "resolve all other pleaded issues" to any issues that are subsumed in the foreclosure claim. That construction is plausible as an implied limitation on the court's authority because it only makes sense that the legislature would restrict a trial court's decision-making authority to issues, such as fall-back claims, equitable defenses, and ancillary claims involving lien priority and attorney fees, that are directly pertinent to the lien foreclosure itself.

However, each of the cases supporting that construction was decided before the Supreme Court, in *PGE,* adopted its current statutory construction methodology. Applying that methodology, there is a second plausible interpretation of the questioned statutory language. The word "all" plausibly could be construed to include all claims permissibly joined in a single action. To compound matters, there are no especially useful contextual clues to the statute's meaning that preclude that alternative construction. Nor, at the second level of construction, is there any helpful legislative history pertaining to the questioned phrase.

Accordingly, we turn to the third level of construction, which requires resort to pertinent maxims of construction. One, in particular, is controlling here. Interpreting the

statute to require the trial court, when it allows a lien, to resolve *all* other pleaded issues—including claims asserted by the opposing party—would lead to clearly unconstitutional results. *See State v. Kitzman*, 323 Or 589, 602, 920 P2d 134 (1996) ("[W]hen one plausible construction of a statute is constitutional and another plausible construction of a statute is unconstitutional, courts will assume that the legislature intended the constitutional meaning."). For example, a party opposing a lien might permissibly counterclaim in tort on grounds not directly related to the lien claim and demand a jury trial. Surely, that party could not be deprived of its right to a jury trial on the tort claim merely because the court allowed the lien.

■　　In *Molodyh*, the Supreme Court observed:

"When a constitutional provision, such as Article I, section 17, prevents a statute from applying to persons or situations to which the statute may have been meant to apply, this court will not declare the statute unconstitutional. Instead, we will hold that the statute was not intended to apply to the persons or situations in question. In doing so, we act with the presumption that the legislature did not intend to violate the constitution."

304 Or at 299 (citation omitted). To avoid unconstitutional results, we therefore conclude that, by directing in ORS 87.060(3) that, "[i]f the lien is allowed, the court shall proceed with the foreclosure of the lien and resolve all other pleaded issues," the legislature meant to limit the court's residual authority to issues subsumed within the lien claim.[3]

---

[3] We would be remiss if we failed to observe that there is a tension in our decisions here and in *Westwood* that must await resolution on another occasion. The dilemma involves how to resolve inconsistencies between the decisions of equally competent finders of fact with respect to the same issue in a single action. For example, suppose that a trial court decides that a lien claimant did not breach the parties' contract and awards the full amount sought. Then suppose that a jury determines that the claimant *did* breach the contract and awards damages to the other party on a counterclaim. Do the recoveries offset? If not, is the claimant entitled to proceed with a foreclosure sale even though it owes a net award to the opposing party? Put another way, if law of the case and preclusion principles are inapplicable, what principles determine the ultimate relief to which each party is entitled? Does the jury's decision override the court's opposing findings? Unsatisfying as it may seem, we can only speculate concerning those matters at this stage, because no jury determination of the breach of contract claim has yet been made in this case.

On appeal, reversed and remanded for entry of award of attorney fees for defendant; otherwise affirmed. On cross-appeal, reversed and remanded for jury trial on plaintiff's breach of contract claim.